**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**Austin Division**

| | |
|---|---|
| HAWXHURST, LLP, <br><br> Plaintiff, <br><br> v. <br><br> INTAMIN AMUSEMENT RIDES INT. CORP. EST., INTERNATIONAL AMUSEMENTS, LLC, and INTAMIN LIMITED, <br><br> Defendants. | Civil Action No. 1:26-cv-191 <br><br> **JURY TRIAL DEMANDED** |
| INTAMIN AMUSEMENT RIDES INT. CORP. EST., INTERNATIONAL AMUSEMENTS, LLC, and INTAMIN LIMITED, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> HAWXHURST HARRIS, LLP, <br><br> Counterclaim Defendant. | |

**DEFENDANTS' ANSWER, DEFENSES AND COUNTERCLAIMS TO THE PLAINTIFF'S COMPLAINT**

COME NOW DEFENDANTS Intamin Amusement Rides Int. Corp. Est., International Amusements, LLC and Intamin Limited ("Intamin Maryland"), (collectively, "Defendants"), by and through counsel, and respectfully submit their Answer, Defenses and Reservation of potential Counterclaims to the Complaint filed by Plaintiff Hawxhurst, LLP.

**COMPLAINT NO. 1:**

**Plaintiff Hawxhurst LLP is a limited liability partnership, and all its partners are citizens of Texas.**

**ANSWER NO. 1:**

Denied. It appears to Defendants that "Hawxhurst, LLP" does not exist. There is no record of this company in the corporate/business entity records of any potentially applicable state (Texas and California). It is also Defendants' understanding that Kyle Foltyn-Smith, who prepared all or most of the pleadings, is a citizen and domiciliary of the State of California.

**COMPLAINT NO. 2:**

**Defendant Intamin Amusement Rides Int. Corp. Est. ("Intamin") is a foreign company headquartered in the Principality of Liechtenstein.**

**ANSWER NO. 2:**

Admitted.

**COMPLAINT NO. 3:**

**Defendant International Amusements, LLC is a limited liability company. Its status with the office of the Maryland Secretary of State is currently listed as inactive. Its only member is Defendant Intamin Limited.**

**ANSWER NO. 3:**

Denied. Defendant International Amusements, LLC was organized under the laws of Texas. The sole member of International Amusements, Inc. is Vittorio Fabbri, a citizen and domiciliary of Texas. Therefore, there is no complete diversity of citizenship, and diversity jurisdiction and subject matter jurisdiction are lacking in this Court.

**COMPLAINT NO. 4:**

**Defendant Intamin Limited is a Maryland corporation with its principal place of business in Anne Arundel County, Maryland. On information and belief, Intamin**

**Limited is the successor in interest to or is a continuation of Defendant International Amusements, LLC.**

<u>**ANSWER NO. 4:**</u>

Denied. Defendant Intamin Maryland is neither the successor in interest to, nor a continuation of, Defendant International Amusements, LLC.

<u>**COMPLAINT NO. 5:**</u>

**This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). Hawxhurst LLP is a citizen of Texas, Defendants International Amusements and Intamin Limited are citizens of Maryland, and Defendant Intamin is a citizen of a foreign country. The amount in controversy exceeds, exclusive of interest and costs, the sum or value of $75,000.**

<u>**ANSWER NO. 5:**</u>

Denied. Defendants can find no record of a "Hawxhurst, LLP" in the Texas Secretary of State records or in the business entity/corporate records of any applicable state. International Amusements, LLC is a citizen and domiciliary of Texas, just as the named Plaintiff alleges that it is.

<u>**COMPLAINT NO. 6:**</u>

**This Court has specific personal jurisdiction over Defendants because they purposefully obtained Hawxhurst LLP's services, Hawxhurst LLP's claims arise out of or result from the services it provided from Texas to Defendants, and the Court's exercise of personal jurisdiction over them comports with fair play and substantial justice.**

<u>**ANSWER NO. 6:**</u>

Denied. Neither International Amusements, LLC nor Intamin Amusement Rides had any agreement (signed, written or otherwise), with any such law firm to represent them, and neither International Amusements, LLC nor Intamin Amusement Rides was ever billed and consequently never paid any money to any law firm in Texas to represent them. No Defendant had any contact

or relationship with the named Plaintiff, which does not appear to exist in the business entity/corporate records of any potentially applicable state.

**COMPLAINT NO. 7:**

**Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, including that the contract was entered into and performed in this District, and under 28 U.S.C. § 1391(b)(3) because at least one of the Defendants is subject to personal jurisdiction in this District with respect to the claims in question.**

**ANSWER NO. 7:**

Denied that venue is proper here or that the named Plaintiff performed any services for Defendants here. No record of the named Plaintiff can be located in the business entity/corporate records of any potentially applicable state.

**COMPLAINT NO. 8:**

**In late 2019, Hawxhurst LLP began representing Defendants International Amusements and Intamin in a dispute where they were alleged to have, *inter alia*, breached a contract and stolen intellectual property. Hawxhurst LLP had previously represented Intamin in other litigation matters involving intellectual property.**

**ANSWER NO. 8:**

Denied. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Only Intamin Maryland paid any law firm for the work loosely described in Plaintiff's Complaint. No record of the named Plaintiff can be located in the business entity/corporate records of any potentially applicable state.

**COMPLAINT NO. 9:**

**Over the next several years, this dispute evolved into several related litigation matters that Hawxhurst LLP represented Defendants in until all remaining matters were settled in late 2025.**

**ANSWER NO. 9:**

Denied. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Only Intamin Maryland paid any law firm for the work loosely described in Plaintiff's Complaint.

## COMPLAINT NO. 10:

**On March 24, 2020, US Thrillrides LLC and Polercoaster LLC filed a demand for arbitration with the American Arbitration Association in Orlando, Florida, that alleged several claims against International Amusements and Intamin. US Thrillrides and Polercoaster valued their claims at $40 million (approximately $20 million against International Amusements and $20 million against Intamin) and prayed to recover any profits attributable to the alleged infringements and exemplary damages ("AAA Arbitration"). The arbitration demand alleges, *inter alia*, that International Amusements and Intamin stole a major amusement ride project from them that is located in Dubai, United Arab Emirates, and pleaded several causes of action including breach of multiple contracts, tortious interference, theft of trade secrets and copyright infringement.**

## ANSWER NO. 10:

Admitted only that there were certain legal disputes between US Thrillrides LLC ("USTR") and Polercoaster LLC ("Polercoaster") on one side, and Intamin and International Amusements on the other side. Denied that they are accurately described in Paragraph 10 to Plaintiff's Complaint.

## COMPLAINT NO. 11:

**Pursuant to the clients' instructions, Hawxhurst LLP immediately filed a complaint with the Federal District Court for the Middle District of Florida seeking declaratory judgment that Intamin's contract with US Thrillrides and Polercoaster (*i.e.*, the Confidentiality and Nondisclosure Agreement ("CNDA")) did not contain an arbitration provision and that it was not a party to the Master Intellectual Property Agreement ("MIPA") that they had premised the arbitration upon or otherwise bound by its arbitration provision ("First Federal Action").[1]**

## ANSWER NO. 11:

---

[1] Such action is <u>Intamin Amusement Rides Int. Corp. Est. v. US Thrillrides, LLC, et al.</u>, M.D. Fla. Case No. 6:20-cv-713-CEM-DCI.

Denied. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Only Intamin Maryland paid any law firm for the work loosely described in Plaintiff's Complaint.

**COMPLAINT NO. 12:**

**Meanwhile International Amusements and Judgment Debtors selected a panel of arbitrators ("Panel") pursuant to the MIPA's terms and proceeded to arbitrate the claims.**

**ANSWER NO. 12:**

Denied. None of the Defendants herein are Judgment Debtors to Plaintiff, USTR or Polercoaster. The term "Judgment Debtors" has not been defined and Defendants do not understand it in this context.

**COMPLAINT NO. 13:**

**On April 26, 2022, the District Court granted summary judgment for Intamin, finding that it was not a proper party to the AAA Arbitration.**

**ANSWER NO. 13:**

Admitted.

**COMPLAINT NO. 14:**

**US Thrillrides and Polercoaster then submitted a request in the AAA Arbitration to voluntarily dismiss their claims. The Panel complied and entered an order determining that International Amusements was the prevailing party in the AAA arbitration.**

**ANSWER NO. 14:**

Admitted.

**COMPLAINT NO. 15:**

**On October 31, 2022, the AAA Panel entered a final award in International Amusements' favor. The AAA Award determined that International Amusements**

**was entitled as the prevailing party to recover its fees and costs from US Thrillrides and Polercoaster jointly and severally pursuant to the MIPA's prevailing party fee provision and 17 U.S.C. § 505 of the Copyright Act. Specifically, the AAA Award ordered them to pay International Amusements $527,887.49.**

**ANSWER NO. 15:**

    Admitted.

**COMPLAINT NO. 16:**

**In early December 2022, pursuant to client instructions, Hawxhurst LLP brought a confirmation action for International Amusements against US Thrillrides and Polercoaster to confirm the AAA Award ("Confirmation Action").[2] Part of the motivation for bringing the action was that Hawxhurst LLP had learned that US Thrillrides and Polercoaster had recently transferred their main assets to a Canadian company without notice to International Amusements.**

**ANSWER NO. 16:**

    Denied. The named Plaintiff did not have any contract with, nor perform any services for,

any Defendant herein relevant to the claims at issue.

**COMPLAINT NO. 17:**

**On December 21, 2022, US Thrillrides and Polercoaster filed voluntary petitions for relief under subchapter V of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Bankruptcy Actions") and the confirmation matter was automatically stayed.[3] From the outset, it appeared that they initiated bankruptcy proceedings solely to deprive International Amusements of its right to collect the AAA Award.**

**ANSWER NO. 17:**

    Admitted.

---

[2] Such action is <u>International Amusements, LLC v. US Thrillrides, LLC, et al.</u>, M.D. Fla. Case No. 6:22-cv-2082-CEM-DCI.

[3] Such actions are <u>In re: US Thrillrides, LLC</u>, Bankr. M.D. Fla. Case No. 6:22-bk-4495 and <u>In re: Polercoaster, LLC</u>, Bankr. M.D. Fla. Case No. 6:22-bk-4496.

**COMPLAINT NO. 18:**

**Along with local bankruptcy counsel, Hawxhurst LLP was counsel to International Amusements and Intamin in the Bankruptcy Actions. On August 17, 2023, the bankruptcy court granted International Amusements' and Intamin's objection and motion to dismiss the Bankruptcy Actions with prejudice. During discovery in the Bankruptcy Actions, Hawxhurst LLP uncovered evidence indicating that William Kitchen, who is the owner of US Thrillrides and Polercoaster, had illegally stripped them of their assets and left them with nothing to satisfy the AAA Award.**

**ANSWER NO. 18:**

Denied. The named Plaintiff did not have any contract with, nor perform any services for,

any Defendant herein relevant to the claims at issue.

**COMPLAINT NO. 19:**

**On December 20, 2023, the District Court in the Confirmation Action confirmed International Amusements' AAA Award in the amount of $567,818.52 against US Thrillrides and Polercoaster and awarded pre- and post-confirmation interest.**

**ANSWER NO. 19:**

Admitted.

**COMPLAINT NO. 20:**

**On July 18, 2024, pursuant to client instructions, Hawxhurst LLP brought a fraudulent transfer and fraudulent conveyance action on behalf of International Amusements against Mr. Kitchen ("Fraudulent Transfer Action") based on the information initially uncovered during the Bankruptcy Actions.[4] The evidence from the Bankruptcy Actions showed that Mr. Kitchen had improperly transferred more than $1,000,000 in cash and assets from US Thrillrides and Polercoaster to himself, leaving them unable to pay International Amusements. In that case, pursuant to client instructions Hawxhurst LLP proceeded to take discovery from Mr. Kitchen and third parties and engaged in discovery motion practice.**

**ANSWER NO. 20:**

---

[4] Such action is International Amusements, LLC v. William J. Kitchen, M.D. Fla. Case No. 6:24-cv-1308WWB-LHP.

Denied. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue.

**COMPLAINT NO. 21:**

> **On August 19, 2025, the District Court in the Confirmation Action awarded International Amusements $320,716.42 for the attorneys' fees and costs that it had incurred in the Bankruptcy Actions and Confirmation Action.**

**ANSWER NO. 21:**

Admitted.

**COMPLAINT NO. 22:**

> **Meanwhile, in July 2022, US Thrillrides and Polercoaster refiled their several claims in Florida state court against Intamin.  These were the same claims they had asserted in the AAA Arbitration, except International Amusements was not included as a defendant. Pursuant to client instruction, Hawxhurst LLP removed the case to the Federal District Court for the Middle District of Florida ("Second Federal Action").[5]**

**ANSWER NO. 22:**

The first and second sentences are admitted. The third sentence is denied. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 23:**

> **In 2024, after extensive discovery had been taken at client request and consent, and several motions litigated at client request and consent, Intamin moved for summary judgment on all claims, filed Daubert motions against US Thrillrides' and Polercoaster's damages and engineering experts, and a renewed motion for sanctions pursuant to Rule 11 and Florida Statute § 57.105. The District Court excluded their damages expert, partially excluded testimony of their engineering expert and granted summary judgment on nearly all claims. All that was left was part of Polercoaster's Copyright Act claim and part of US Thrillrides' and Polercoaster's claim for breach**

---

[5] Such action is <u>US Thrillrides, LLC, et al. v. Intamin Amusement Rides Int. Corp. Est.</u>, M.D. Fla. Case No. 6:22-cv-2338-CEM-DCI.

**of the parties' CNDA. Hawxhurst LLP had achieved a massive victory on summary judgment. The district court deferred ruling on Intamin's renewed sanctions motion until after trial.**

## ANSWER NO. 23:

Denied. The "massive victory on summary judgment" proved to be useless since it was disregarded in the trial and in the judge's instructions to the jury. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue.

## COMPLAINT NO. 24:

**In June 2025, pursuant to client instruction, the parties had a week-long jury trial; US Thrillrides and Polercoaster obtained a verdict on the Copyright Act claim for $1,500,000 ($500,000 per an infringed work) and on Plaintiffs' CNDA breach claim for $1,499,665 in compensatory damages and $500,000 in special damages. During closing, Plaintiffs had asked the jury to award them over $20 million in damages.**

## ANSWER NO. 24:

Admitted only that a trial was held and that Intamin lost badly. Otherwise, denied. Gerald "Jerry" Hawxhurst called the President of the Defendants, Sandor Kernacs, around ten (10) days prior to the trial indicating that there would be a call with the judge the next day to determine whether there will be a trial at all, and promised to call Mr. Kernacs the next day – which Mr. Hawxhurst never did – thereby railroading Intamin Maryland into the trial without having any opportunity to explore any settlement options, which Mr. Hawxhurst was offered by USTR and Polercoaster but were not disclosed to or discussed with Defendants.

## COMPLAINT NO. 25:

**Thereafter, the parties filed several post-trial motions that were fully briefed, but not ruled on. Among other motions, Intamin filed a renewed motion for judgment as a matter of law and a motion for new trial. The motions addressed several issues and explain in detail under the applicable standards why there was no infringement of the three alleged copyright works under the Copyright Act and why there was no breach**

**of the CNDA's copyright provision. They also explain why both claims fail for non-substantive reasons. For instance, the Copyright Act claim was subject to judgment as a matter of law because there was no evidence showing an infringing act in the United States. As another example, Intamin was entitled to a new trial because it was prejudicial error for the court not to instruct the jury that the CNDA claim is limited to the three registered works at issue (all of which post-date the CNDA's expiration and therefore are not covered by it).**

**ANSWER NO. 25:**

Admitted only that post-trial motions were filed. Otherwise, DNK Denied. Answering further, the judge in that case clearly indicated that if the judgment were appealed, then the potential new trial would take a very long time in his Court, and then he recommended that the parties settle.

**COMPLAINT NO. 26:**

**Counsel for US Thrillrides and Polercoaster and Mr. Kitchen himself recognized that the jury verdict would not withstand post-trial motions and/or appeal, asking immediately after the jury was released if Intamin would be willing to engage in settlement discussions.**

**ANSWER NO. 26:**

Denied. USTR and Polercoaster were ready to walk away from any claim well before the final prior trial occurred. However, Defendants' defense lawyers were far more interested in continuing litigation to increase their attorneys' fees and litigation costs at Defendants' expense, so defense counsel in that case hid and/or misrepresented USTR's and Polercoaster's settlement offers.

**COMPLAINT NO. 27:**

**While the post-trial motions were pending, pursuant to client instruction, the parties agreed to stay all pending matters so that they could attend a global mediation that would cover all of the claims between International Amusements, Intamin, US Thrillrides, Polercoaster, and Mr. Kitchen.**

**ANSWER NO. 27:**

Admitted only to the extent that "the parties" does not include Hawxhurst LLP. Otherwise, denied. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 28:**

> **International Amusements and Intamin were in a very strong position going into the mediation, as recognized by the mediator and opposing counsel. While US Thrillrides and Polercoaster had obtained a verdict against Intamin on two claims for approximately $3.5 million and were seeking fees and interest, Hawxhurst LLP had determined that it was much more likely than not that Intamin would prevail entirely on post-trial motions, including its renewed judgment as a matter of law, amendment of the judgment to prevent double recovery, motion for new trial, and/or an appeal. Hawxhurst LLP also believed that it was more likely than not that International Amusements would prevail on its fraudulent transfer action, and would be able to collect all if not most of the judgment that Hawxhurst LLP had obtained on its behalf. If Intamin prevailed on all issues, its potential net upside would be materially more than $2.5 million (including International Amusements' award).[6] This analysis was discussed extensively with the client. Likewise, the client was advised that it owed Hawxhurst LLP well over $1.2 million due and owing it for representation in the various matters—payment which it had agreed to delay pending final resolution of the matters.**

**ANSWER NO. 28:**

Denied. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Moreover, this is a complete misrepresentation. The intentionally hidden legal fees were not disclosed until December 22, 2025, and February 2, 2026 – after the defense law firm gambled at Intamin Maryland's risk but then lost that gamble. The defense law firm wanted to collect the intentionally hidden legal fees from

---

[6] Intamin's prevailing party fees and expenses through trial and post-trial briefing: $1,500,000; sanctions estimate: $1,000,000; International Amusements' award: $939,000 (including post-confirmation interest as of October 2025).

Intamin Maryland, so there had not been any discussion of agreement on or relating to unknown legal fees, other than defense counsel's statement that it would only get paid from recovering the opposing parties at the end of the litigation.

**COMPLAINT NO. 29:**

**In October 2025, the parties attended the mediation and reached a confidential settlement of all matters. For reasons that will not be disclosed, the client chose to settle the claims.**

**ANSWER NO. 29:**

Denied. Once it became clear that the defense law firm had no interest in, and no intention of, settling the case, Sandor Kernacs, President of the Defendants, decided to settle the matter directly with Bill Kitchen for payment of $375,000.00 by Intamin, Ltd. to the opposing parties, to cover the Morgan & Morgan legal fees, which would have been zero had the case been settled promptly and prior to trial.

**COMPLAINT NO. 30:**

**After the matters settled, as agreed, Hawxhurst LLP provided all outstanding invoices to Defendants concerning the settling matters. Hawxhurst LLP had previously agreed to delay certain of the invoices and also agreed to specific discounts that are reflected in these amounts. Collectively, Defendants owe Hawxhurst LLP $1,297,938.94 for the Second Federal Action wherein the firm represented Intamin (of which $147,368.94 are for costs and expenses advanced by Hawxhurst LLP). Defendants owe Hawxhurst LLP $102,805.50 for the Confirmation Action, and $114,946.39 for the Fraudulent Transfer Action wherein the firm represented International Amusements (of which $2,109.89 are for costs and expenses advanced by Hawxhurst LLP). The total amount due and owing is $1,515,690.83 and Defendants are jointly and severally liable for the entire amount. To date, Defendants have refused to pay the amount due and owing to Hawxhurst LLP.**

**ANSWER NO. 30:**

Denied. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Intamin Maryland never asked for, accepted

nor agreed to a postponement on or delay of any invoice, and it would have stopped the litigation immediately if those would have been presented in a timely manner, as proven with the timely payments of the prior regular monthly billing. Defendants believe and contend that defense counsel was running up the bills for their own benefit and that is the reason why Jerry Hawxhurst and the defense law firm kept lying and hiding or failing to send and disclose invoices. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 31:**

**Hawxhurst LLP hereby repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 30, inclusive.**

**ANSWER NO. 31:**

 Defendants incorporate by reference their answers to Paragraphs 1 through 30 to the Plaintiff's Complaint as though fully set forth herein. Otherwise, denied.

**COMPLAINT NO. 32:**

**Defendants contracted for Hawxhurst LLP to provide legal services to them in connection with several litigation matters.**

**ANSWER NO. 32:**

Denied. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 33:**

**Except insofar as its performance was excused by the acts of Defendants, Hawxhurst LLP fully performed all acts, services and conditions required on its part pursuant to the parties' contract in connection with the litigation matters.**

**ANSWER NO. 33:**

Denied. The defense law firm did a horrible job and committed malpractice on a $2 million claim by trying to collect almost $4.5 million in legal fees, costs and expenses instead of representing Intamin Maryland's best interests. Defense counsel should have explored and negotiated over settlement and advised the Defendants herein to do the same. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 34:**

**Hawxhurst submitted written invoices to Defendants for services rendered and expenses and costs incurred.**

**ANSWER NO. 34:**

Denied. The defense law firm had manipulated and failed to send or disclose its invoices in bad faith and with fraudulent intent. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 35:**

**On or around December 20, 2025, Defendants breached the contract by failing and refusing to pay the amount due and owing.**

**ANSWER NO. 35:**

Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 36:**

**To date, Defendants owe Hawxhurst LLP $1,515,690.83, jointly and severally, for the services rendered and costs and expenses advanced in connection with the litigation matters.**

**ANSWER NO. 36:**

Denied. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Only Intamin Maryland  agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 37:**

**As a direct and proximate result of Defendants' breach of the contract, Hawxhurst LLP has been damaged in the sum of at least $1,515,690.83, plus pre- and post-judgment interest. Defendants are also liable for Hawxhurst LLP's reasonable attorneys' fees and expenses incurred in connection with this action.**

**ANSWER NO. 37:**

Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at

issue. Only Intamin Maryland  agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

## COMPLAINT NO. 38:

**Hawxhurst LLP hereby repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 30, inclusive.**

## ANSWER NO. 38:

Defendants incorporate by reference their answers to Paragraphs 1 through 30 to the Plaintiff's Complaint as though fully set forth herein. Otherwise, denied.

## COMPLAINT NO. 39:

**In late 2019, an account was started by and between Hawxhurst LLP and Defendants.**

## ANSWER NO. 39:

Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract, account or relationship with, nor perform any services for, any Defendant herein relevant to the claims at issue.  Only Intamin Maryland  agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

## COMPLAINT NO. 40:

**By conduct, Defendants agreed that the amount stated in the account, as reflected in Hawxhurst LLP's invoices, was the correct amount that they are indebted to Hawxhurst LLP. Defendants did not at any time, up to and including the date this complaint was filed, dispute that they owed the stated amount to Hawxhurst LLP. Further, Defendants have not taken any legal action to challenge the amounts claimed by Hawxhurst LLP.**

**ANSWER NO. 40:**

Denied. This is another blatant misrepresentation. Defendant Intamin Maryland could not possibly agree and did not in fact agree to pay unknown, hidden and undisclosed invoices. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract with, nor perform any services for, any Defendant herein relevant to the claims at issue. Defendants promptly disputed and challenged the billing when it finally was presented. Only Intamin Maryland  agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 41:**

**By the parties' contract and impliedly by their conduct, Defendants promised to pay their indebtedness to Hawxhurst LLP.**

**ANSWER NO. 41:**

Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract, account or relationship with, nor perform any services for, any Defendant herein relevant to the claims at issue. Defense counsel told Defendants that defense counsel would recover their fees from the opposing parties and their counsel as frivolous litigation sanctions or pursuant to fee-shifting statutes. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 42:**

**Hawxhurst LLP has demanded that Defendants pay their indebtedness and they failed and refused to do so.**

**ANSWER NO. 42:**

Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract, account or relationship with, nor perform any services for, any Defendant herein relevant to the claims at issue. Defense counsel told Defendants that defense counsel would recover their fees from the opposing parties and their counsel as frivolous litigation sanctions or pursuant to fee-shifting statutes. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 43:**

**Defendants are indebted to Hawxhurst LLP in the amount of $1,515,690.83, the entirety of which is due, owed and unpaid. Hawxhurst LLP is entitled to recover full satisfaction of the debt, plus pre- and post-judgment interest. Defendants are also liable for Hawxhurst LLP's reasonable attorneys' fees and expenses incurred in connection with this action.**

**ANSWER NO. 43:**

Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract, account or relationship with, nor perform any services for, any Defendant herein relevant to the claims at issue. Defense counsel told Defendants that defense counsel would recover their fees from the opposing parties and their counsel as frivolous litigation sanctions or pursuant to fee-shifting statutes. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 44:**

      **Hawxhurst LLP hereby repeats and incorporates by this reference each and every allegation set forth in paragraphs 1 through 30, inclusive.**

**ANSWER NO. 44:**

      Defendants incorporate by reference their answers to Paragraphs 1 through 30 to the Plaintiff's Complaint as though fully set forth herein. Otherwise, denied.

**COMPLAINT NO. 45:**

      **Hawxhurst LLP provided valuable legal services to Defendants in connection the several litigation matters against US Thrillrides, Polercoaster, and Mr. Kitchen.**

**ANSWER NO. 45:**

      Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract, account or relationship with, nor perform any services for, any Defendant herein relevant to the claims at issue. Defense counsel told Defendants that defense counsel would recover their fees from the opposing parties, and their counsel, as frivolous litigation sanctions or pursuant to fee-shifting statutes. Only Intamin Maryland  agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 46:**

      **Defendants were each directly benefitted from Hawxhurst LLP's legal services.**

**ANSWER NO. 46:**

      Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not

have any contract, account or relationship with, nor perform any services for, any Defendant herein relevant to the claims at issue. Defense counsel told Defendants that defense counsel would recover their fees from the opposing parties, and their counsel, as frivolous litigation sanctions or pursuant to fee-shifting statutes. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 47:**

**Defendants accepted Hawxhurst LLP's legal services.**

**ANSWER NO. 47:**

Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract, account or relationship with, nor perform any services for, any Defendant herein relevant to the claims at issue. Defense counsel told Defendants that defense counsel would recover their fees from the opposing parties, and their counsel, as frivolous litigation sanctions or pursuant to fee-shifting statutes. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

**COMPLAINT NO. 48:**

**Defendants had reasonable notice that Hawxhurst LLP would perform the legal services and expect compensation from Defendants for such services.**

**ANSWER NO. 48:**

Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any

Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract, account or relationship with, nor perform any services for, any Defendant herein relevant to the claims at issue. Defense counsel told Defendants that defense counsel would recover their fees from the opposing parties, and their counsel, as frivolous litigation sanctions or pursuant to fee-shifting statutes. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

## COMPLAINT NO. 49:

**Defendants failed to pay for the legal services that Hawxhurst LLP provided to them and Hawxhurst LLP has been damaged in the sum of at least $1,515,690.83, plus pre- and post-judgment interest.**

## ANSWER NO. 49:

Denied. This is another blatant misrepresentation. There were no unpaid invoices presented until mid to late December 2025, and February 2, 2026. The last prior invoice sent to any Defendant was dated November 7, 2023, and was timely paid. The named Plaintiff did not have any contract, account or relationship with, nor perform any services for, any Defendant herein relevant to the claims at issue. Defense counsel told Defendants that defense counsel would recover their fees from the opposing parties, and their counsel, as frivolous litigation sanctions or pursuant to fee-shifting statutes. Only Intamin Maryland agreed to pay or paid defense counsel in the prior litigation, and all payments timely billed and actually due have been paid.

## WHEREFORE,

**Hawxhurst LLP prays for judgment against Defendants, jointly and severally, as follows:**
**a.    On each cause of action asserted by Hawxhurst LLP and an award of monetary damages of at least $1,515,690.83 plus pre- and post-judgment interest;**
**b.    An award of Hawxhurst LLP's reasonable and necessary attorneys' fees and costs of court pursuant to Tex. Civ. Prac. & Rem Code § 38.001; and,**

      c.    **Such other relief at law or in equity to which Hawxhurst LLP may be justly entitled.**

**ANSWER:**

Admitted only that the Plaintiff seeks the specified relief. Denied that the Plaintiff is entitled to all or any of the specified relief or any other relief.

## JURY DEMAND

Defendants demand a trial jury on all claims, defenses, demands, denials and other issues so triable.

## DEFENSES AND AFFIRMATIVE DEFENSES

1.    **Lack of Subject Matter Jurisdiction.** The sole member of International Amusements, LLC is a citizen and domiciliary of Texas. Therefore, there is no complete diversity of citizenship, and diversity jurisdiction and subject matter jurisdiction are lacking in this Court.

2.    **Non-Existence of Plaintiff.** Defendants assert that "Hawxhurst LLP" does not exist as a legal entity and cannot be found in the business entity/corporate records of the Secretary of State or State Corporation Commission of either Texas or California.

3.    **Lack of Personal Jurisdiction.** Personal jurisdiction over the Defendants is lacking in this Court. Defendants had no written or signed or other contract with the named Plaintiff. Only Intamin Maryland paid a different company and law firm for services. Defendants lack minimum contacts with the State of Texas. Most of the work on the case was performed by attorneys in California. The prior cases were filed and litigated in Florida.

4.    **Improper Venue.** Defendants deny that venue is proper in this District, as the relevant contracts and arbitration were not conducted in the State of Texas, but rather in Florida. Defendants lack minimum contacts with the State of Texas and are not present or located here. Most of the work on the case was performed by attorneys in California. There is no signed retainer agreement or other agreement with a forum-selection clause.

5.    **Non-Performance, Negligence, Breach of Contract and Breaches of Fiduciary Duty.** Defense counsel committed malpractice, negligence, breach of contract and breaches of fiduciary duty during the litigation, including hiding and failing to disclose invoices, inflating claims, and bills, failing to provide good advice on settlement, and hiding and/or failing to convey or disclose settlement offers to the Defendants.

6.    **Fraud and Misrepresentation.**    Defense counsel acted in bad faith and fraudulently and inaccurately billed for services and costs that were not provided or were billed in amounts that were inaccurate. Defense counsel intentionally misrepresented the amounts due, failed to convey or disclose settlement offers and proposals, and ran up unnecessary litigation costs.

7.    **Failure to Mitigate Damages.** Defense counsel failed to act in the Defendants' best interest, by hiding and failing to disclose settlement offers and opportunities and running up excessive and unnecessary litigation costs. Defense counsel did not bill Defendants for a two-year period.

8.    **Set-off and Recoupment.** Any amounts allegedly owed to Defense counsel should be reduced or offset by the damages caused to Defendants by Defense counsel's malpractice, negligence, bad faith misrepresentations, breaches of contract, breaches of fiduciary duty, omissions and fraud.

9.    **Unclean Hands.** Plaintiff engaged in misconduct, including misrepresentations, fraud, hiding and failing to disclose legal fees and settlement offers, and pursuing unnecessary and inefficient litigation.

10.    **Waiver and Novation.** Defense counsel stopped billing Defendants between November 7, 2023 and December 22, 2025, and promised, through Jerry Hawxhurst, that defense counsel would collect the remainder of their fees, costs and expenses from the Defendants' litigation opponents and their lawyers, through either fee-shifting statutes or frivolous litigation sanctions.

11.    **Prior Material Breach.** The defense counsel who represented one or more of the Defendants committed the first and prior material breaches of contractual, legal and fiduciary obligations by:

a.    Not obtaining a written retainer agreement or engagement letter.

b.    Not regularly billing Intamin Maryland or sending it invoices.

c.    Providing negligent or bad advice about the merits of the dispute and the value or lack of value in settlement efforts.

d.    Not encouraging or pursuing settlement.

e.    Not providing adequate notice that the trial was going forward or actually notifying or preparing the Intamin Companies and their officers, managers and witnesses.

f.    Hiding and not communicating or disclosing the former plaintiffs' and adversaries' settlement offers or proposals.

g.    Not adequately advising the Intamin Companies, and especially Intamin Maryland, about the risks of the case, the risks of losing, and that these risks could be avoided and resolved by way of a relatively inexpensive settlement.

**h.**    Sending overcharged and inaccurate bills and invoices.

**i.**    Not conducting or managing the cases proportionally or rationally based on the amount of fees, costs and expenses incurred and the likely costs and expenses of settlement, versus the risks of litigation.

These prior material breaches discharge Defendants from any payment obligations which they might otherwise have had to defense counsel.

## <u>RESERVATION OF COUNTERCLAIMS</u>

Defendants reserve the right to assert Counterclaims against Plaintiff, and if it turns out to be the entity that performed services for Defendants, against Hawxhurst Harris, LLP, and against the individual attorneys who represented Defendants, once the disputed issues of subject matter jurisdiction, personal jurisdiction, venue and the proper identities of the parties have been resolved.

Respectfully Submitted This 9th Day of March, 2026:

INTAMIN AMUSEMENT RIDES INT. CORP. EST.,
INTERNATIONAL AMUSEMENTS, LLC, AND
INTAMIN LIMITED.


By: /s/ Anthony Icenogle
             Counsel
Anthony Icenogle
Icenogle & Boggins, PLLC
6907 N. Capital of Texas Highway
Suite 220
Austin, TX  78731
Tel: 512.342.9519
Fax: 512.342.9555
anthony@icenoglefirm.com
*Counsel for Defendants*


Michael C. Whitticar (V.S.B. No. 32968)
NOVA IP Law, PLLC
155 Broadview Avenue, Suite 200
Warrenton, VA 20186
Phone: (571) 386-2980
Fax: (855) 295-0740
Email: mikew@novaiplaw.com
*Pro Hac Vice* Planned
*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th Day of March, 2026, the foregoing Answer, Defenses and

Affirmative Defenses, and Reservation Of Counterclaims to Plaintiff's Complaint was filed with

the Court's electronic filing system and served on the following counsel of record by email:

Gerald E. Hawxhurst
Texas State Bar No. 24090636
jerry@hawxhurstllp.com
Kyle Foltyn-Smith
Texas State Bar No. 24090636
kyle@hawxhurstllp.com
HAWXHURST LLP
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
Tel: (512) 522-4995
Fax: (512) 522-4961
*Attorneys for Plaintiff Hawxhurst LLP*

/s/ _ Anthony Icenogle_____
       Anthony Icenogle
